United States Bankruptcy Court
Eastern District of Michigan
Northern Division

In re:

JULIA PEREZ,                                              Case No. 05-22230-WS

              Debtor.                                     Chapter 7

_____/

OPINION GRANTING MOTION TO DISMISS FOR SUBSTANTIAL ABUSE

      This matter is before the Court on the United States Trustee's motion to dismiss this pre-BAPCPA case pursuant to 11 U.S.C. § 707(b). Following a hearing, the Court instructed the parties to file briefs on the issues of whether Debtor, Julia Perez's, payment of her PSP (retirement account) 1loans is mandatory and whether there is a lack of need for Chapter 7 relief that constitutes a substantial abuse of the bankruptcy process. The Court concludes that in the present case payments to the PSP are not madatory and can be included in income and that there is a lack of need and thus the filing constitutes a substantial abuse of the bankruptcy process.

      When Debtor filed her chapter 7 bankruptcy petition on May 16, 2005, her oldest daughter was 17 years old and still in high school. Schedule J showed Debtor's income to be $3,978.82, which included $645.67 per month in child support. Debtor testified that her child support

income was lowered to $498.00 per month since her daughter turned 18. The household income prior to deductions was $126,500 yearly. After deductions, it was $8,230.71 monthly which totaled $98,768.52 yearly. Schedule I indicated monthly household expenses of $8,183.08, with Debtor's spouse having individual debts of $1,868.61 per month.

On July 29, 2005, the U.S. Trustee filed a motion to dismiss pursuant to § 707(b), asserting that $820 in monthly disposable income could be used to fund a chapter 13 plan. Perez filed an objection to the motion to dismiss asserting that the surplus is only $47.63 and that there is no law that allows the Trustee to assume that the debtor is responsible for one half of the monthly expenses. Perez also indicated that her future employment is uncertain with Delphi, State remedies do not ease her financial situation, her lenders will not work out agreements with her, that she has a daughter starting college soon and, her husband has his own financial problems.

Section 707(b) provides that the bankruptcy court, on its own motion or the motion of the United States Trustee, "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor." Substantial abuse can be predicated on a showing of either a lack of honesty or a want of need. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *Behlke v. Eisen* (*In re Behlke*), 358 F.3d 429, 433 (6th Cir. 2004).

The Trustee here is relying on a lack of need. The factors relevant when looking at need include: if the disposable income permits liquidation of her consumer debts with relative ease; whether the debtor enjoys a stable source of future income; whether she is eligible for adjustment of her

2

debts through Chapter 13 of the Bankruptcy Code; whether there are state remedies with the potential to ease her financial predicament; the degree of relief obtainable through private negotiations; and whether her expenses can be reduced significantly without depriving her of adequate food, clothing, shelter and other necessities. *In re Behlke*, 358 F.3d at 433.

### 1. Ability to Pay

One way courts determine a debtor's ability to pay is to evaluate whether there would be sufficient disposable income to fund a Chapter 13 plan. See *Stuart v. Koch* (*In re Koch*), 109 F.3d 1285, 1288 (8th Cir. 1997); *Zolg v. Kelly* (*In re Kelly*), 841 F.2d 908, 914 (9th Cir. 1988). "Disposable income" is income "received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2).

Following a hearing, the Court instructed the parties to file briefs giving a summary of their positions, including worksheets from the Trustee and a discussion of the loan repayment on Debtor's PSP retirement account and if the loan repayments constitute income.

This Court agrees with the Trustee's adjustments to expenses on the worksheets, and further notes that in some areas the worksheets are a conservative estimate of budget cuts that may be made. It must first be noted that Debtor's calculations all include a family of four. As the oldest daughter is 18 and in college, it is not the responsibility of the creditors to support the daughter who is now properly an adult. Thus, the cellular phone bill or $140 per month may be reasonably reduced to $100 per month. The clothing expense of $225 may be reasonably reduced to $150. The recreation

3

expense at $150 a month may be reasonably reduced to $100. The vehicle insurance expense of $1252.50, which Debtor claims is high due to the poor driving record of the 18 year old daughter, may be reasonably reduced to $400. There is no need for the Debtor to pay for the insurance of her 18 year old daughter or for the Debtor's spouse to drive two vehicles. The hair care expense of $120 may be reasonably reduced to $50. School and work lunches of $150, with an independent food budget of $755, may be reasonably reduced to $50. These saving alone in the budget bring the expenses down to $6,995.58. Also, along with these figures, Debtor stated that her water bill was high because the household owns and operates a pool and that her husband drives and maintains two vehicles himself. This Court would note that these certainly count as unnecessary for 707(b) purposes at least, and that there may have been other areas in which expenses might be reduced..

Taking the Debtor's filed Schedules I and J as accurate, they can be analyzed as follows:

Schedule I:

|  | Debtor | Spouse |
|---|---|---|
| Gross Income | $4,523.70 | $6,018.00 |
| less payroll deductions | $1,190.55 | $1,766.11 |
|  | $3,333.15 |  |
| plus child support | $498.00 |  |
|  | $3,978.82 | $4,251.89 |
| less individual expenses |  | $1868.61 |
|  |  | $2383.28 |

Schedule J:

| | | |
|---|---|---|
| Total Household Expenses | | $8,183.08 |
| | less cellular phone | $40 |
| | less clothing | $75 |
| | less recreation | $50 |
| | less car insurance | $852.50 |
| | less hair care | $70 |
| | less school and work lunches | $100 |
| | | $6,995.58 |
| | less spouse's credit card debt | $200 |
| | less husband's retirement | $43.61 |
| | less spouse's alimony | $1,625 |
| | | $4826.97 |

If Debtor pays 50%:         $2413.49 =  $1565.33 surplus per month

If Debtor pays 60%          $2896.18 =  $1082.64 surplus per month

Under a 36 month plan:

Debtor paying 60% of shared household debt  =  $38,975.04

Total: $38,975.04 less trustee's estimated fees: $1230.48 = $37,744.56

Unsecured creditors under schedule F:  $48,405

Paying 78% over 36 months

And over 100% over 60 months.

      Debtor pays $201.78 weekly to repay loans taken from her PSP retirement account.

6

Debtor argues that repayment of these loans is mandatory. However, the loan contracts state that "As an active employee, if you fail to make the required loan payments and such failure continues beyond the calendar quarter following the calendar quarter in which a required loan payment was due, your loan will be defaulted and you will be deemed to have received a distribution in the amount equal to the sum of the outstanding principal and accrued interest." (Prospectus and Summary Plan Description, p 37). *In Harshbarger v. Pees* (*In re Harshbarger*), 66 F.3d 775, 777-78 (6th Cir. 1995), the Court found that the debtor's voluntary repayment of loans to her ERISA-qualified profit sharing account should be treated as part of the disposable income in the bankruptcy estate. Affirming the rejection of a Chapter 13 plan, the court held that: "This expenditure may represent prudent financial planning, but it is not necessary for the 'maintenance or support' of the debtors." *Id*. at 777. The court explained its rationale as follows:

> It is unfortunate that Mrs. Harshbarger's expected pension benefits may be diminished by a future setoff against the unpaid portion of her obligation to the ERISA-qualified account. However, this consideration does not alter the result under the bankruptcy laws. In these circumstances, "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." *In re Jones*, 138 B.R. 536, 539 (Bankr. S.D. Ohio 1991).

*Id*. at 778.

A number of courts have held this reasoning is equally applicable to a debtor's voluntary contributions to a 401K or other retirement plan. *See, e.g.*, *Anes v. Dehart* (*In re Anes*), 195 F.3d 177, 180-81 (3d Cir. 1999) (loan repayments are in effect contributions to the debtor's retirement account and are disposable income for purposes of a Chapter 13 plan). In fact, many bankruptcy courts have included voluntary 401K contributions as disposable income in considering whether dismissal was warranted for substantial abuse

7

under § 707(b). *See Austin*, 299 B.R. 482, 486-87 (Bankr. E.D. Tenn. 2003) (voluntary retirement contributions constitute disposable income in considering dismissal under § 707(b)) (citing cases); *In re Keating*, 298 B.R. 104, 110-11 (Bankr. E.D. Mich. 2003) ("There is an inherent unfairness in permitting a debtor to pay himself by funding his own retirement account while paying creditors only a fraction of their just claims."); *In re Heffernan*, 242 B.R. 812, 818 (Bankr. D. Conn. 1999) (overwhelming consensus among bankruptcy courts that debtor's voluntary payment into pension, savings, or 401K-type plan is not a reasonably necessary expenditure) (citing cases). But see *In re Mills*, 246 B.R. 395, 401-02 (Bankr. S.D. Cal. 2000) (allowing a modest contribution to 401K to be excluded from disposable income where the debtor is near the age of retirement and has no other retirement savings plan). Although there would be tax considerations from this withdrawal, it is not a mandatory repayment. Further, Debtor is not near retirement, and this contribution is more than modest, thus it should be considered disposable income. Monthly, this would amount to increased income of $201.78 weekly multiplied 4.3 times to equal $867.65. Although the Court cannot determine where Debtor worked this into her budget, it is not an allowed expense and it must be treated as income.

2. Substantial Abuse - All Factors

Turning to the ultimate question of whether there was substantial abuse warranting dismissal under § 707(b), the finding of substantial abuse rests not only on the finding that Debtor has an ability to pay her creditors out of future income approximately $ 1082.64 per month, but also on consideration of the other noted factors relevant to determining whether Debtor is "needy." I.E.: whether debtors enjoy

8

a stable source of income, whether debtors' expenses may be reduced significantly without depriving them of adequate food, clothing, shelter and other necessities and whether debtors' financial situation is the result of an unforseen catastrophic event. *In re Krohn*, 886 F.2d at 126-28. Debtor and her spouse are both employees of Delphi, and as such, have asked this Court to take judicial notice of public accounts that describe the company's current financial situation and pending bankruptcy. While this Court agrees that wages and positions with Delphi may not be completely secure, there is no specific indication that debtor and her husband's jobs will be affected, or if so what they might receive by way of buy-outs or other remuneration, if they are. As of the date of this hearing, the articles cited claim that jobs will be cut by the end of 2010, which, even if affecting Debtor, would give her ample time to complete a Chapter 13 plan before any change in her employment status. Second, there is no indication at which plants the cuts will be made. Third, one article indicates that Delphi may offer $50,000 bonuses each in exchange for pay cuts, which would be enough to pay off the unsecured debt before the pay cut went into effect. And forth, but most importantly, these articles included as exhibits speculate upon possible courses of action Delphi may take and this is an insufficient basis upon which to primarily rest a 707(b) inquiry .

      As noted, Debtor's expenses can be reduced without depriving her of adequate food, clothing, shelter and other necessities. Beyond the PSP loan repayments, much of Debtor's excess income goes toward expenses of her 18 year old daughter. While it is admirable for parents to help their children, even after the age of majority, it is not a path they may chose over paying their creditors. Further, much of the excess expense comes from car insurance, which Debtor claims is high because her 18 year old daughter lost her license twice. This is a burden that does not need to fall on the creditors, especially when it arises from such circumstances. Debtor also testified about paying college tuition for the 18 year old

9

daughter, stating it was $1105 per semester before books. Again, this is not an expense that Debtor should factor into her accounting. Several Courts have held that an adult child's college education should not be funded by a debtor's creditors. *See In re Stallman*, 198 B.R. 491 (Bankr. W.D. Mich, 1996); *In re Staub*, 256 B.R. 567 (Bankr. M.D. PA. 2000). Further, a Bankruptcy Court has found that, a parent is neither legally obligated to support his child, nor pay for the child's college education if the child has reached the age of majority and has no physical or mental handicaps. *In re Studdard*, 159 B.R. 852, 856 (Bankr. D. Ark. 1993).

Moreover, although Debtor was laid off for five weeks in 2005, Debtor had resumed her position, and until recent months, even had overtime, which was not factored into her current income. This is not the case of a calamity which instigated a bankruptcy filing, but rather a case of a lifestyle exceeding her means (and which can be adjusted) and self-imposed credit card debt. Cf. *In re Fessler*, 168 B.R. 622 (Bankr. N.D. Ohio 1994) (loss of employment of both breadwinners in household constitutes calamity); *In re Shepherd*, 147 B.R. 422 (Bankr. N.D. Ohio 1992) (debtor forced into bankruptcy due, in part, to psychological trauma of catastrophic events including (1) charge of rape against debtor's live-in companion, (2) murder of debtor's brother[,] (3) conviction of murder against debtor's other brother and (4) death of debtor's close personal friend).

Some other factors are whether she is eligible for adjustment of her debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease her financial predicament, and the degree of relief obtainable through private negotiations. *In re Krohn*, 886 F.2d at 126-28. Debtor testified that she attempted state remedies and private negotiations to no avail. The Court is not aware of any appropriate state remedies. While those facts work in her favor, their weight is not

10

such, when balanced against those that do not, as would require denial of this motion.

Under the totality of the circumstances and for the reasons indicated, dismissal of Debtor's Chapter 7 petition is warranted due to substantial abuse.

An appropriate order will enter.

**Entered: July 06, 2006**

                                          **/s/ Walter Shapero**
                                  **Walter Shapero**
                                  **United States Bankruptcy Judge**